| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:03CR241-1 |
| | ) | 1:03CR242-1 |
| BENNY LYNN ISOM | ) | |

## MEMORANDUM ORDER

Before the court is *pro se* Defendant Benny Lynn Isom's motion
to alter or amend (Doc. 215)[1] the court's order dated April 12,
2022 (Doc. 13), which denied his motion for compassionate release
without prejudice (Doc. 209).  Isom styles his motion a "Rule 59(e)
motion for response."  (Id. (capitalization adjusted).)  While
Isom requests that the court order the Government to respond to
certain questions he raises, the court construes the motion as one
seeking to alter or amend the judgment pursuant to Federal Rule of
Civil Procedure 59(e).

On November 29, 2022, the court ordered the Government to
address certain factual questions relating to two paragraphs of
Isom's pre-sentence investigation report.  (Doc. 219.)  The
Government filed its response on January 13, 2023, attaching
records from some of Isom's prior state court convictions.  (Docs.

---

[1] As noted by the caption, Isom has filed his motion pursuant to Federal
Rule of Civil Procedure 59(e) in both of his criminal cases.  Unless
otherwise indicated, all references herein are to the docket in case
number 1:03CR241-1.

224, 225.)  In the interim, Isom filed a document entitled, "Motion for Discovery to Produce Legal Documents," which reiterates his arguments to be re-sentenced.  (Doc. 220 (capitalization adjusted).)  Isom also filed a reply brief.  (Doc. 226.)[2]  For the reasons set forth below, Isom's motion for reconsideration will be denied.

## I.    BACKGROUND

Isom's two cases were consolidated for trial.  In 2004, the jury convicted him, and he was sentenced by Judge William L. Osteen, Sr.[3] to 659 months' imprisonment and ordered to pay $48,596.00 in restitution for separate armed bank robberies (occurring 11 days apart) during which he carried and used, by brandishing, a firearm in violation of 18 U.S.C. § 924(c).  (Doc. 68.)  The Fourth Circuit affirmed the judgment and sentence. United States v. Isom, 138 F. App'x 574 (4th Cir. 2005).

On November 23, 2020, Isom moved for compassionate release. (Doc. 195.)  This court found that he failed to exhaust his administrative remedies and denied the motion without prejudice. (Doc. 201.)

On February 7, 2022, Isom again moved for compassionate release.  (Doc. 209.)  The Government responded (Doc. 210), and

---

[2] Isom also filed a motion to compel.  (Doc. 227.)  As that motion is unrelated to the limited issue for which the Fourth Circuit remanded the action, the court does not consider it.

[3] Judge Osteen, Sr. died in 2009.

Case 1:03-cr-00242-TDS   Document 224   Filed 01/26/23   Page 2 of 21

Isom replied (Doc. 212). Isom rested his contentions at that time on his two "stacked" convictions under 18 U.S.C. § 924(c) (requiring punishment of at least 7 and 25 years, respectively), along with a "substantive change in both the statutory language and punishment [in the law]" under the First Step Act. (Doc. 209 at 3, 7.)[4]

After conducting the individualized assessment of Isom's case pursuant to United States v. McCoy, 981 F.3d 271 (4th Cir. 2020), this court found that Isom failed to demonstrate extraordinary and compelling reasons. (Doc. 213 at 15-21.) In reviewing the record as well as assessing the factors under 18 U.S.C. § 3553(a), the court cited Isom's violent and "traumatic" crimes, his age at the time of the offenses, his history of criminal conduct, and his lack of rehabilitation. (Id.) Further, unlike the McCoy defendants, who were very young and had served almost the full length of their presumptive sentences had they been sentenced under

---

[4] While Isom did not mention any other basis, his request for sentence reduction to the Bureau of Prisons also cited his age (65) and declining health, as well as the need to care for his mother. (Doc. 209 at 6-9.) The court, construing Isom's request in the light most favorable to him, nevertheless addressed these additional bases. As to the medical issues, the court noted that Isom claims a "reoccurring [sic] battle with Hepatitis (C)," high blood pressure, and "chronic lower back pain." (Doc. 209 at 7.) The court concluded, however, that updated medical records reflected that these conditions, alone or in conjunction with the other cited reasons, failed to establish extraordinary and compelling reasons. In particular, the court noted that Isom ceased taking his back medication (Doc. 211 at 1 (discontinued due to "noncompliance"), 10), his hypertension was well managed by medication (e.g., id. at 8-9 (noting blood pressure of 129/78), 43 (noting blood pressure of 133/81)), and his hepatitis C kidney disease was considered in remission (id. at 9).

3

the new § 924(c) regime, Isom would still have served only about half of his prison sentence had he been sentenced without the 25-year stacking provision applicable to his second § 924(c) conviction. McCoy, 981 F.3d at 279, 286; (Doc. 210-1 at 3; Doc. 213 at 17-18.) After reviewing all of these factors as well as Isom's other contentions, the court denied Isom's motion for compassionate release. (Doc. 213.)

On May 5, 2022, fewer than 28 days after the court's denial of compassionate release, Isom filed a notice of appeal to the Fourth Circuit. (Doc. 214.) At the same time, he filed his motion for reconsideration with this court. (Doc. 215.) On October 11, 2022, the Fourth Circuit remanded Isom's appeal to "permit[] the district court to rule on [Isom's] timely post-judgment motion." (Doc. 218.)

Isom's present motion makes two requests. First, Isom asks this court to order "the United States Attorney's Office to specifically address the sole issue of what constitute [sic] a second and subsequent 924(c) conviction." (Doc. 215 at 1.) Isom then lists three "issues." (See Doc. 215.) His first "issue" is "whether Congressional Intent in regards to changing the statutory language and penalty phase and clarifying how the 924(c) second and subsequent 924(c) triggers is deemed retroactive?" (Id. at 2.) Isom argues that § 403 of the First Step Act clarifies congressional intent by deleting "second and subsequent" and that

4

these changes, along with the penalty phase, are retroactive. (Id.) He also argues that the "second 924(c) mandatory 25 years can only trigger onece [sic] the First 924(c) has become final." (Id.) He further contends that he has "never had a First 924(c) conviction." (Id.)

Isom's second issue is "whether the United States attorney has the authority to change, amend, or alter the sentencing judges [sic] judgement [sic] and commitment orders?" (Id. at 3.) Isom argues that the judgment did not require him to pay restitution while incarcerated.

Isom's third issue is "whether the United States Attorney's office intentionally and deliberately used erroneous information that [Isom] was never arrested, indicted or convicted for [sic] prior to this instant offense?" (Id. at 4.) He then proceeds to argue that he was never arrested, indicted, or convicted of either robbing a Wachovia Bank or a Sprint telephone company prior to the instant offense. (Id.) He further contends: the "second 25 year and 5 year sentence I received in 1990 was VACATED by the Honorable Victor A Rawl." (Id.)

The second request in Isom's motion is that the court either "recind [sic] your order" or "in the alternative grant a resentencing hearing on the second 924(c) conviction." (Id. at 4.) It is unclear whether the "issues" raised by Isom form the basis for his motion to alter or amend the judgment. However,

5

construing the contentions in the light most favorable to Isom, the court considers all as arguments to alter or amend the court's order denying his request for compassionate release without prejudice (Doc. 213). Each contention will be addressed in turn.

## II. ANALYSIS

### A. Request for Government Response

Isom's first request is that the court order the Government to respond to the three "issues" he lists. (Doc. 215.) In so doing, he appears to invoke Federal Rule of Civil Procedure 59(e). However, as noted below, Rule 59(e) does not provide a basis for lodging questions to an opponent. Rather, it is a vehicle for Isom to move to alter or amend the court's prior order. Isom cites no other rule, case law, or reason as to why the Government should be required to answer his "issues" after the court has entered its ruling on his motion. The court therefore declines to entertain his urging that the Government be ordered to do so.

### B. Motion to Alter or Amend

#### 1. Standard of Review

Pursuant to Rule 59(e), a court may alter or amend a final judgment or order for the following reasons: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Pacific Insurance Co. v. American National Fire Insurance Co., 148 F.3d 396, 403 (4th Cir.

6

1998); see Fed. R. Civ. P. 59(e). Rule 59(e) "permits a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." Pacific Insurance Co., 148 F.3d at 403 (citation 2 omitted). The moving party bears the burden of establishing one of the three grounds for reconsideration. Loren Data Corp. v. GXS, Inc., 501 F. App'x 275, 285 (4th Cir. 2012) (unpublished).[5]

While "[t]he district court has considerable discretion in deciding whether to modify or amend a judgment" under Rule 59(e), Gagliano v. Reliance Standard Life Ins. Co., 547 F.3d 230, 241 n.8 (4th Cir. 2008), the Fourth Circuit has cautioned that "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." Pacific Insurance Co., 148 F.3d at 403 (citation omitted). Litigants may not use the motion "to raise arguments which could have been raised prior to the issuance of the judgment, nor . . . to argue a case under a novel legal theory that the party had the ability to address in the first instance." Id. And while the court's authority to reconsider orders "may be tempered at times by concerns of finality and judicial economy," "[t]he ultimate responsibility of the federal courts . . . is to reach the correct judgment under law."

---

[5] The Fourth Circuit does not accord precedential value to its unpublished opinions but has noted that they "are entitled only to the weight they generate by the persuasiveness of their reasoning." See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (citation omitted.)

*American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515–16 (4th Cir. 2003) (holding that "the district court abused its discretion in denying the [motion for reconsideration]").

The Fourth Circuit has explained that "the Federal Rules of Civil Procedure do not apply to motions under § 3582," because § 3582 motions are "criminal in nature." *United States v. Goodwyn*, 596 F.3d 233, 235 n.* (4th Cir. 2010). When it comes to criminal judgments, reconsideration is generally disfavored as well, but for reasons of finality. *See, e.g.*, *United States v. May*, 855 F.3d 271, 274-75 (4th Cir. 2017) (stating that the prohibition on § 3582(c)(2)-based motions for reconsideration is "not based on a limitation that Congress has clearly ranked as jurisdictional" but is "implied from § 3582(c)(2)'s silence on a district court's authority to grant motions for reconsideration, coupled with sentence finality interests and 'the clear intent of § 3582 . . . to constrain postjudgment sentence modifications'" and is subject to waiver) (quoting *Goodwyn*, 596 F.3d at 235-36).

A motion for compassionate release differs from a request to modify a criminal sentence and, as such, is not bound by the same finality considerations. Perhaps for this reason some courts have applied the civil standard to motions for reconsideration of decisions denying compassionate release. *See, e.g.*, *United States v. Mansfield*, No. 2:17-CR-00205-DCN-1, 2022 WL 44987, at *2-3 (D.S.C. Jan. 5, 2022). Therefore, assuming without deciding that

8

the more forgiving civil standard provides guidance here, the court considers Isom's arguments. In this regard, construing Isom's filing liberally in light of his pro se status, the court construes his "issues" as arguments supporting a Rule 59(e) motion. However, none of his issues meets the standards warranting an amendment or alteration of the judgment. Pacific Insurance Co., 148 F.3d at 403 (4th Cir. 1998). As a threshold problem, none of the arguments is new, and all could have been raised before the court entered its order. For this reason alone, they fail.

### 2. Isom's Contentions

Turning to his specific contentions, Isom first maintains that the substantive changes in § 403 of the First Step Act are retroactive. (Doc. 215 at 2.) Based on this, he further argues that because the new law requires a prior final § 924(c) conviction before a second § 924(c) mandatory 25-year sentence can be triggered, and because he lacked a prior final § 924(c) conviction, he is not subject to the 25-year stacked sentence. Isom's arguments are wrong both legally and factually.

The anti-stacking provisions of the First Step Act were expressly not retroactive. First Step Act of 2018, S. 756 115th Cong. § 403(b) (2018); United States v. Jordan, 952 F.3d 160, 174 (4th Cir. 2020) (concluding that § 403's changes to the stacking of § 924(c) convictions apply to offenses committed before date of

9

enactment only if sentence had not been imposed as of the date of enactment).

Moreover, while Isom is correct that his first convictions would fail to qualify under current law (because both of his § 924(c) convictions were entered at the same time), such was not required at the time of his sentencing. His sentence was lawful at the time.

As it relates to his request for reconsideration, the First Step Act was not an <u>intervening</u> change in controlling law following this court's order denying his motion for compassionate release. The First Step Act of 2018 <u>preceded</u> Isom's February 2022 motion, and Isom made a similar argument at that time (Doc. 209 at 3), which the court fully considered and denied. (Doc. 213.) Isom has also not shown that the court erred in its judgment.

Isom next raises factual contentions about his underlying convictions set out in his pre-sentence investigation report.[6] At the outset, it should be noted that none of these contentions would directly affect his stacking argument, as none was used as a predicate for either of his § 924(c) convictions in the present

---

[6] These challenges sound more like a challenge to the underlying sentence, which should be raised by a motion pursuant to 28 U.S.C. § 2255. <u>United States v. Ferguson</u>, 55 F.4th 262, 272 (4th Cir. 2022). In practice, the line between compassionate release and a motion to vacate is sometimes less than clear. In order to discharge its duty to conduct an individualized assessment of Isom's compassion release motion based on an accurate account of his criminal history, the court addresses his arguments in the context of Isom's present motion.

cases. However, to the extent they relate to the court's review of the individualized circumstances of the defendant in considering whether he has raised extraordinary and compelling reasons for release and in considering the § 3553(a) factors, they do not at this time persuade the court to alter its prior order.

First, Isom argues that the United States Attorney's Office "intentionally and deliberately used erroneous information that [he] was never arrested, indicted or convicted for prior to this instant offense." (Doc. 215 at 4.) In specific, he argues that he was "never arrested, indicted or convicted for robbing any Wachovia Bank," nor was he "charged or convicted of armed robbery of a Sprint telephone company prior to this offense." (Doc. 215 at 4.) Presumably this refers to paragraphs 65 and 60, respectively, of his pre-sentence report, which set out various pending charges. (Doc. 137 at 160-20.) However, the pre-sentence report properly mentioned Isom's charges in the Wachovia and Sprint robberies as merely charges. And, this court has regarded them as that – only charges.

Next, Isom argues that "the second 25 year and 5 year sentence [he] received in 1990 was VACATED by the Honorable Victor A. Rawl" and that he was "given immediate release from prison with no probation or supervision in 1998." (Doc. 215 at 4.) This presumably relates to paragraphs 53 (felonious armed robbery, robbery with a dangerous weapon, and misdemeanor assault of a

11

police officer while resisting arrest) and 54 (three counts of felonious threatening life, person, or family of a public official) of the pre-sentence report. (Doc. 137 ¶¶ 53, 54.)

The pre-sentence report, prepared February 4, 2004, does not reflect that his convictions in paragraphs 53 and 54 were vacated. However, the addendum to the pre-sentence report notes Isom's objection to paragraph 54. (Doc. 137 at 29.) At sentencing, Isom's attorney raised his objection to paragraph 54 but declined to be heard because no criminal history points were assessed for it and it did not affect his guideline range as a career offender. (Doc. 60 ¶ 7; Doc. 77 at 6-7; Doc. 137 ¶¶ 42, 43.) The probation officer's addendum noted that the NCIC report confirmed the convictions in paragraph 54.[7] (Doc. 137 at 29.)

While neither the pre-sentence report nor Isom provides a record supporting Isom's contentions as to paragraphs 53 and 54, the probation office, at the direction of the undersigned, examined the court records in South Carolina for the convictions noted in paragraphs 53 and 54. The probation office confirmed that the civil docket reflects that the South Carolina court, Judge Rawls, granted Isom post-conviction relief and that the case was returned to the general court of justice. Based on that information, the

---

[7] This may have been because any post-conviction relief Isom received was treated as a civil matter and posted on the civil docket in Charleston, South Carolina, and thus did not appear on the NCIC report.

court directed the Government to examine the public records with respect to paragraphs 53 and 54 of the pre-sentence report and address what effect, if any, they have on the convictions reported in those paragraphs as they relate to Isom's motion for compassionate release. (Doc. 219.)

The Government has filed its response. (Docs. 224, 225.) As to paragraph 53, the South Carolina court records confirm that Isom was initially sentenced to 25 years' imprisonment for count one and 1 year of imprisonment on count two in case 90-GS-10-3710 on February 7, 1991, consecutive to each other and to all other sentences. (Doc. 225 at 55-56.) The documents reflect, as Isom has previously represented to this court (see Doc. 161 at 2), that Isom entered a plea deal whereby he pled guilty to the felonious armed robbery in count one. More specifically, the South Carolina records reveal that Judge Rawl signed a document in case 90-GS-10-3710 reflecting that Isom's armed robbery offense was resolved by a "negotiated sentence" and he was sentenced to "25 years susp[ended] on time served" and given credit for incarceration from August 8, 1990. (Doc. 225 at 45.) The document is signed by Judge Rawl and dated September 15, 2001. (Id.) Thus, while Isom contends his conviction was "vacated" and that he was given immediate release, the South Carolina records do not reflect that. And while Isom has previously maintained that he was released on August 17, 1998 (Doc. 161 at 2; Doc. 215 at 4), he has now recanted

13

and agrees, as the pre-sentence report reflects, that he was released from prison on August 17, 2001 (Doc. 137 ¶¶ 53, 54; Doc. 220 at 5.) According to the pre-sentence report, the court records, and Isom's admission, therefore, Isom served approximately 11 years for his armed robbery in paragraph 53.

As for count two – misdemeanor assault of a police officer while resisting arrest, Isom's initial 1-year sentence was "nolle prossed" by operation of a document signed October 16, 2001, which simply notes that "defendant pled to A.R. [Armed Robbery] charges." (Doc. 225 at 52.)

As to paragraph 54 of the pre-sentence report, which reflects three convictions (following jury trial) for felony threatening of life, person, or family of a public official for which Isom was sentenced to three 5-year terms of imprisonment concurrent with each other but consecutive to the convictions in paragraph 53 of the pre-sentence report, South Carolina records dated September 5, 2001, reflect "NP" for each. (Doc. 225 at 18, 23, 30.) Though there is no record signed by a presiding judge, this would suggest that these convictions were nolle prossed on September 5, 2001.

Taken together, the South Carolina records substantiate Isom's claims to the extent they reflect that his convictions in paragraph 53 were reduced to a 25-year suspended sentence based on time-served for armed robbery, his convictions in paragraph 54 were nolle prossed, and he served from August 8, 1990, to September

14

15, 2001.

Apart from the conduct in these two paragraphs, Isom's pre-sentence report details an extensive criminal history. (Doc. 137 at 11-15.) At age 18, he broke into a dorm room and stole a stereo and was later convicted of felony forgery and felony receiving stolen goods, as well as grand larceny, and sentenced to 7 years. (Id. ¶¶ 46, 47.) He was also convicted of felony house-breaking and armed robbery and sentenced to 25 years' imprisonment. (Id. ¶ 48.) While incarcerated, he pled guilty to felony escape and aggravated assault. (Id. at ¶ 49.) He was paroled in July 1983, but by March 1984 he was engaged again in criminal activity and was convicted of felony robbery (committed in March 1984) and felony strong-armed robbery (committed in June 1984). (Id. ¶¶ 50-51.) In both circumstances, Isom possessed, or claimed he possessed, a weapon. (Id.) He was convicted of felony strong-armed robbery and felony assault and battery in July 1984. (Id. at ¶ 52.) During this encounter, Isom assaulted the owner of a store by striking her in the head before stealing cash. For these three convictions, he was sentenced to 10 years each, to run concurrently, except for the strong-armed robbery, which was ordered to run consecutively.

In 1991, as noted above, Isom was found guilty of felony armed robbery/robbery with a dangerous weapon as well as misdemeanor assault of a police officer while resisting arrest and sentenced

15

to 25 years. (Id. at ¶ 53.) Another charge of felonious possession of a firearm by a felon was nolle prossed at the time of his conviction. (Id. ¶ 53.) While Isom's convictions were reduced to "25 years susp[ended] on time served" and he was given credit for incarceration from August 8, 1990, via a "negotiated sentence," the reasons are not apparent on this record. Isom himself represents it was due to the trial judge's comments before the jury. (Doc. 161 at 2.) What is clear is that Isom's sentence was not reduced because of lack of evidence or innocence.

This court did refer to Isom's prior convictions in its prior order denying compassionate release and in reviewing his extensive criminal history, which included reference to paragraphs 53 and 54. (Doc. 213 at 15, 20-21.) However, the discussion above does not alter this court's determination that compassionate release at this stage is unwarranted. This court, as well as the sentencing court, were well aware that Isom received a substantial sentence for an armed robbery in 1990, that he had been committing theft-related felonies since age 18 (for some 29 years, and since 1984 frequently with a weapon), that his continuous crimes caused him to be imprisoned from 1976 to 1990, only to be jailed and then imprisoned again for new offenses from 1990 to 2001. Within a mere seven months of his September 15, 2001 release, as a middle-aged man at age 46, Isom committed the instant violent armed bank robberies in April 2002. He also threatened a witness prior to

16

his trial in this case. (Doc. 137 ¶ 26.) Sentences of 7 years, 10 years (one of which was to run consecutive), and two at 25 years each (one in 1975 and one in 1991, although later reduced) -- a total of 804 months -- were not sufficient to deter him. Moreover, he has multiple serious prison infractions, including threatening bodily harm, verbally threatening bodily harm to a staff member, attempted introduction of narcotics and cell phone, indecent exposure, and possession of hazardous tool, drugs, and alcohol. (Doc. 210-3.) It is true that since his 2003 conviction Isom has taken some steps toward rehabilitation, completing 543 hours of educational courses over the course of his 18 years in custody. But he has paid little of his restitution, satisfying only $62.18 of the $48,596.00 imposed. (Doc. 210-4.)

Considering the complete record, the court cannot say that his present sentence of 644 months for armed bank robberies, assessed in conjunction with the change in law as to the stacked § 924(c) convictions as well as all of his arguments in the context of Covid-19, constitute extraordinary and compelling reasons to warrant compassionate release at this time. Nor has Isom persuaded the court that the § 3553(a) factors warrant release. Deterrence, protection of the public, promoting respect for the law, and just punishment counsel against release now or in the near future. As the court stated in its order denying compassionate release, it may be that some reduction in sentence could be warranted at a

17

later date. But whether Isom can demonstrate compassionate release somewhere down the road remains to be seen. The court's denial of his motion for release now is without prejudice to his raising the motion when he has served more of his sentence. See, e.g., United States v. Hancock, 1:06-cr-206-2, 2021 WL 848708, at *5 (M.D.N.C. Mar. 5, 2021), aff'd, No. 21-7393 (4th Cir. Mar. 1, 2022).

In a reply brief, Isom reiterates his contentions and then raises new arguments not previously made: namely, claiming that he should not have been designated a career offender because two convictions for strong-arm robbery in his pre-sentence report (paragraphs 51-52) were actually common law robberies and the total criminal history points should not have been calculated to a criminal history VI. (Doc. 226 at 3-4.)

Isom never raised these contentions in his original filings in this court,[8] although his attachments to his reply brief make clear that he was aware of them since his original sentencing hearing on February 4, 2004. The court will not consider matters newly raised in the reply. Tyndall v. Maynor, 288 F.R.D. 103, 108 (M.D.N.C. 2013) (noting that courts in this district "have consistently held that '[r]eply briefs . . . may not inject new grounds . . . [and that an] argument [that] was not contained in

---

[8] He also failed to raise these grounds in his request for reduction in sentence to the Bureau of Prisons, but that is not itself a bar to consideration. Ferguson, 55 F.4th at 269.

18

the main brief . . . is not before the Court'") (quoting <u>Triad</u>
<u>International Maintenance Corp. v. Aim Aviation, Inc.</u>, 473 F. Supp.
2d 666, 670 n.1 (M.D.N.C. 2006)); <u>see also</u> <u>Jarvis v. Stewart</u>, No.
1:04CV00642, 2005 WL 3088589, at *1 (M.D.N.C. Nov. 17, 2005);
<u>Pouncey v. Guilford County</u>, No. 1:18CV1022, 2020 WL 1274264, at *5
(M.D.N.C. Mar. 17, 2020) (noting that the rule "exists to give the
replying party a chance to rebut newly raised arguments, not to
give the replying party an unfair advantage in having a chance to
make new arguments that should have been raised initially").

Even were the court to consider Isom's new contentions, they
fail procedurally and on the merits. Procedurally, Isom's
challenges to several prior convictions and calculation of his
criminal history points contained in his pre-sentence report are
an attack on his prior sentence. The proper vehicle for that is
a motion to vacate, set aside, or reduce sentence pursuant to 28
U.S.C. § 2255. <u>Ferguson</u>, 55 F.4th at 272. Substantively, Isom
was designated a career offender under sentencing guideline § 4B1.1
on the basis of having at least two prior crimes of violence.
(Doc. 137 ¶ 41.) Even if the two strong-arm robberies Isom
contests were only common law robberies, as he argues (Doc. 226 at
3), they nevertheless constitute crimes of violence under § 4B1.1;
and, apart from those, Isom still has at least two prior
convictions for armed robbery, which also qualify as crimes of
violence (Doc. 137 ¶¶ 48, 50, 53). <u>See</u> <u>United States v. Doctor</u>,

842 F.3d 306, 308 (4th Cir. 2016) (holding that South Carolina common law robbery satisfied the force clause of the Armed Career Criminal Act); United States v. King, 673 F.3d 274, 279 n.3 (4th Cir. 2012) (applying precedents analyzing the Armed Career Criminal Act force clause to the "crime of violence" term in U.S.S.G. § 4B1.1); Gadsen v. United States, 229 F. Supp. 3d 427, 430 (D.S.C. 2017) (holding that South Carolina strong-arm robbery is a lesser included offense of armed robbery and that both are crimes of violence). Moreover, Isom's attempt to recalculate his criminal history points misses the point. They were irrelevant to his designation as a career offender. Thus, nothing in Isom's reply would alter the court's decision.

Finally, Isom raises an unrelated contention that he was not ordered to pay restitution while incarcerated. (Doc. 215 at 3.) This is not a basis for altering or amending this court's order denying his compassionate release.

In sum, the court finds inadequate reason to warrant reconsidering, altering, or amending its prior order denying Isom's request for compassionate release without prejudice.

### C. Motion for Discovery

On December 12, 2022, Isom filed a motion styled "Motion for Discovery to Produce Legal Documents." (Doc. 220 (capitalization adjusted).) Isom argues that the trial court used "predicates that were vacated prior to the present sentence," reiterating his

20

arguments as to paragraphs 53 and 54 of the pre-sentence report. (Id. at 2.) Instead of seeking discovery, Isom asks the court to "correct the calculations and sentence based on law." (Id. at 6.) To the extent this is an attack on Isom's underlying sentence, it is outside the scope of a motion for compassionate release. Ferguson, 55 F.4th at 272. Moreover, because the court has already addressed his issues and the Government has already obtained the South Carolina court records, Isom's motion will be denied.

## III. CONCLUSION

For the reasons stated, therefore,

IT IS ORDERED that Isom's "Motion for Discovery to Produce Legal Documents" (Doc. 220) is DENIED; and

IT IS FURTHER ORDERED that Isom's "Rule 59(E) Motion for Response" (Doc. 215) is DENIED.


                                        /s/   Thomas D. Schroeder
                                    United States District Judge
January 26, 2023